which was issued yesterday, whether the defendant intervener possesses jurisdiction to be in this court. Why are you arguing that? You don't represent the intervener. You represent the United States, I thought. Because the court asked whether customs regulations should be invalidated. And I would like to address that issue, Your Honor. All right. The judgment fund would not apply in this case because the lower court did not issue a money judgment. Specifically, the lower court issued an affirmative injunction instructing customs to affect the distribution. The court asked customs to submit the amount that customs would have been entitled to had it applied in a timely manner. What's the difference between ordering a money judgment in X dollars and ordering that there be a dispersal of dollars in the amount that equals to X? Because the court was ordering customs, because it ruled that customs had violated a statute, it was ordering customs pursuant to the APA to affect the operation of that statute in distributing the burden distribution. The court, pursuant to the APA, does not have the power to issue a money judgment. It has the power and equity to order customs to comply with the statute that it finds that customs has violated that's pursuant to the Supreme Court's decision in Southern Utah Wilderness Alliance. All right. Therefore, customs regulation would be valid because it would have to go back and collect any overpayments which were made. Moreover, customs has an obligation, even if the court were to issue a money judgment, pursuant to the Debt Collection Act 31 U.S.C. 3701, to collect any overpayments that were made. Debt collection is defined in 3701 as overpayments. Now to the merits. Customs properly denied offset distributions to Dixon pursuant to 1675. Why shouldn't customs failure to follow the regulatory deadline have canceled the deadline for the pencil makers, as well as for customs itself? Because as this court and the Supreme Court have repeatedly held, a simple violation of a statute does not necessarily invalidate subsequent. You're not following me. It may be true that under the Supreme Court case, American, that an agency can relax a deadline. But if it's going to relax the deadline for itself, why shouldn't it have to relax the deadline for the other guy? It did, Your Honor. It provided. It didn't. It provided the same 60 days for the other party. It gave itself more time and didn't give the pencil maker more time. But it did. If customs had not relaxed any deadlines, it would have provided the pencil maker 46 days. It provided the pencil makers the full 60 days, which they are provided pursuant to. Yeah, but it provided itself more, more than the normal time. Yes, Your Honor. Its notification was due the 30th of June, not issued until the 14th of July. So it gave itself a two-week extension of time. It didn't give a two-week extension of time to the pencil maker. There was none requested, Your Honor. There was never an extension of time. The point is, why should a court allow customs to cancel a deadline applying to it and not cancel the same regulations deadline that applies to the other party? If that were the case, Your Honor, in this case, if Dixon had applied only 14 days late, Dixon might have a more credible argument. Dixon applied 44 days subsequent to the 60-day deadline, not 14 days. It didn't take that extra 14 days. But this is a regime where the statute creates a deadline. All payments must be by November 30th. All applications by U.S. makers must be in by October 30th. And then with that as the statutory background, customs apparently has thought to itself, well, that's a little too tight on timing. So what we'll do is we'll advance the day that we're going to announce and we'll advance the time that the American industries have to file so we won't have a last-minute rush. Okay, fine. If those deadlines are going to apply equally to everybody, that makes a certain amount of sense. But once the deadlines, the earlier deadlines of the regulation schedule aren't being followed, why shouldn't the regime default to the statutory deadline under which, provided that Dixon filed by October 30th, which they did, they're in time under the statute and then you'd have 30 days to process their application. Why shouldn't we be following the statutory deadlines once the regulatory deadlines have been overthrown by customs itself? The statute is not worded particularly in that way, Your Honor. It is worded that distributions must be made 60 days subsequent to the end of the fiscal year. However, the notice is required 30 days prior to distribution, not subsequent to the end of the fiscal year. Therefore, customs does not wish to always wait the full 60 days pursuant to the statute to make these distributions. It's technically not feasible to make all those distributions on the 60th day. Therefore, customs has promulgated regulations. The 30-day notice requirement merely requires that notice be provided 30 days before the distribution. Are you quarreling with my calculation that under the statute, the distribution money has to be paid out not later than November 30th and the notification has to be not later than October 30th? The statute is worded in such a way that, yes, the distribution must be made not later than November 30th. However, the statute is also worded in such a way that the notification is required 30 days prior to the distribution, not prior to that 60-day deadline for making the distribution. It's specifically worded so that there must be a full 30-days notice prior to that distribution. The statute leaves within customs' discretion to make that distribution any time after the end of the fiscal year within that 60-day period and then provide 30 days prior to that to apply for those distributions. I'd like to reserve the rest of my time. So then, according to you, the customs notification, if the statutory schedule were applicable because the regulatory schedule had been waived, then it would be September 30th that would be the latest statutorily permissible notification date for customs? No, Your Honor. It would be 30 days prior to the distribution. So statutorily permissible, yes, the latest date would be October 30th. However, the statute permits customs to make a distribution within any of those 60 days subsequent to the end of the fiscal year. It only requires the notification to be 30 days before the distribution. It's not 30 days subsequent to the end of the fiscal year. And that's an intentional wording in the statute to provide customs that full 60 days to make the distribution and provide the full 30-day notice to the recipients. Are you saying that the statute guarantees customs 60 days for processing? It guarantees customs, yes, Your Honor. The statute, not the regulation, the statute. Yes. Show me the language. 1675C requires distributions to be made within 60 days subsequent to the end of the fiscal year. It also requires notice 30 days prior to the distribution. If customs were to issue that notice on August 30th or 31st, customs would have 60 full days subsequent to the end of the fiscal year within which to make that distribution. So then, if I'm understanding you correctly, the statute doesn't guarantee any absolute amount of processing time. It all depends how much processing time there would be. It would simply depend on how early customs issued the notification. I thought you had said that there was a minimum of 60 days of processing time guaranteed to customs by the statute. Are you now retracting that? I misspoke, Your Honor. There's a guaranteed 60 days if customs issues the notice 30 days prior to the end of the fiscal year. There's only a guaranteed 30 days if customs waits until the actual end day of the fiscal year, which would be unmanageable for customs with the large number and large amount of distributions. I'd like to reserve whatever time I have left for rebuttal, Your Honor. All right. Thank you. Mr. Thompson? Good morning, Your Honor. George Thompson of the law firm Neville-Peterson on behalf of General Rose Moon and Musgrave. Yes. Now, what do you have to add to what Mr. Silverbrand has argued? Well, Your Honor— What's different from your perspective than his? Well, I have to confess I did not take into account the Debt Collection Act, so I haven't thought about its impact on my argument. It supports your argument. If you're going to have to disgorge the money, the overage, that supports your argument that, A, you belong in the case, and, B, you got hurt by the ruling. Oh, we certainly do believe that. You haven't responded to my question. What do you have to add to what the Justice Department counsel has told us? As to why the decision of the trial court should be reversed. That's why we're here, right? He wants us to reverse the trial court's decision. So do you. He's given us a bunch of reasons. Do you have new and different reasons? I do have the additional reason that Mr. Silverbrand did not delve into, which is that there has been no showing of prejudice to Dixon because of the— Well, he argued that in his brief. I asked him so many questions that he didn't have much chance to argue all the points in his brief here. But we have the prejudice issues squarely presented to us by his brief and your brief and the opinion of the court below. Well, I wouldn't have additional arguments beyond those in the briefs, if that's what Your Honor is asking. Well, I'm just trying to figure out what you can add this morning to what we already have in front of us. And your answer is prejudice. Okay. And if Your Honor would want me to proceed along those lines, I'd be happy to. If you're satisfied with the arguments as presented in the briefs, then I will take that into account as well. But the argument on prejudice stems from the fact that Dixon takes the approach that once the June 30th administrative deadline had passed, it was under no further obligation to monitor the Federal Register. Was there any effort to supplement the administrative record by Dixon in which they could show some excuse, some explanation, some justification for why they stopped monitoring and how and when they finally discovered that the notification had been issued? What triggered their October 23rd filing? Your Honor, was there any evidentiary material sought to be added to the record below? Not that I'm aware of, Your Honor. Was there anything in the administrative record that would explain to a reader why they slept on their rights from June 30th until October 23rd? Nothing whatever, Your Honor, as far as I can tell. So then your argument would be zero evidence of prejudice in the record, zero supplementary evidence proffered. That would be one of our points, Your Honor. In fact, we believe that the administrative record here is a point on which we disagree with the government. We believe that the administrative record was far too narrow. It only included correspondence involving Dixon. And we believe that the full administrative record should have involved the entire record of the 2003 fiscal year distribution, which would have shown that more than 1,800 claimants actually did file on time, despite the July 13th publication. It's not disputed, and no one's disputing the number of people who filed or even the number of pencil makers who filed. So what difference does it make whether the record is of all the pencil cases or all the cases from 2003 versus the record as it was actually presented to Judge Barzilai? We think that it makes a big difference because in determining whether Dixon was prejudiced because of the July 13th filing, the court should take into account the fact that numerous other claimants similarly situated did monitor the Federal Register, did not assume, as Dixon has claimed, that there was no distribution that year and got their applications in in a timely manner. So that doesn't show that the problem was with the publication date. It shows that the problem was with Dixon. Are you saying that the only source of error, as you would put it by Judge Barzilai, was that she excluded evidentiary materials, administrative record materials that she should have included? That's just one of many allegations of error. We believe, as with the government, that there was no prejudice and that the... Well, if you're right on prejudice, then you don't need anything more, right? I'm covering my base as your Honor. But, well, with those comments in mind, unless the panel has questions... All right. Thank you. Thank you. Mr. Traver. Oh, I'm sorry. He doesn't have any to be restored. I apologize. Okay. Mr. Traver, 15 minutes, if you need it. Yes, sir. And may it please the Court, my name is Dan Traver and I represent the Appolite Dixon Teconda Road Company. Your Honor, one thing which I think your discussions with opposing counsel called into question, it's very clear,  failed to observe the notice deadline in 1962. Mr. Traver, here's what you need to address. Judge Barzilay held and said in her opinion that Dixon was justified in not monitoring the Federal Register for possible notification of a distribution affecting it starting July 1 and for the rest of the year. Now, if we find that that's an error, it seems like her decision would have to fall. So in our trying to examine whether that's a sound conclusion, isn't it the case that the statute requires all collected money to be distributed every year? Yes, your Honor. And isn't it the case that in every prior year, going back about a decade, Dixon got such a distribution? Yes, your Honor. And isn't it the case that in calendar 2003, duties were collected from the Chinese importers? Yes, your Honor. And therefore, there was money in the bank, so to speak, to be distributed in 2003 as well, right? I understand that now, your Honor, but I do not believe that my client had full knowledge of that as 2003 was ongoing. Well, is there any evidence that you can point to that your client had reason to believe that on or before December 31, 2002, that all the Chinese importers had stopped importing these pencils? Your Honor, the only evidence in the record that I can point to that points out a reason why my client failed to understand it was true. That's not the question. The question is whether there's anything in the record that shows that your client had reason to believe that there was a sudden, total stop in all Chinese pencil importations prior to the start of calendar 2003. To answer your question directly, your Honor, no, but I don't believe my client did. So therefore, your client knew that he should expect a distribution in 2003 like every prior year? I'm not certain of that, your Honor. I don't think the record shows that. Well, how could any rational lawyer or business person think otherwise? Every single year there had been a distribution. Every year Dixon got money. The imports hadn't been known to have stopped, so of course there's money in the account. So of course there'll be a distribution in 2003. So of course there'll be some notice. And therefore, if I'm monitoring the Federal Register as of June 30 and I haven't seen the notice yet, I can't reasonably conclude it's never going to come. I have to reasonably conclude exactly the opposite. It is going to come later than the reg calls for it, but it is going to come because there's money there, and the statute says you shall distribute the money. So therefore, obviously Dixon should keep looking at the Federal Register. Well, your Honor, I respectfully disagree because what you're asking my client to do is impose a due diligence requirement on my client. I understand the pragmatic aspect of your argument, and I understand the consensus. I'm not making an argument. I'm asking questions so I can understand how the law should be applied to these facts. Certainly, your Honor. And it gets to prejudice. The prejudice question and the standard that this Court has set out is whether my client has suffered an injury to an interest that the statute, regulation, or rule in question was designed to protect. And it doesn't say anything about my client. It doesn't impose an additional requirement on my client to impose a due diligence requirement, to say that if customs does not follow its own regulations, then a burden stays upon my client or shifts to my client to keep monitoring. I didn't hear any argument about due diligence. I'm just asking you about the common sense of the situation as to whether, as Judge Barzali opined, it was appropriate for your client to assume as of July 1st that there was going to be no distribution that year because there hadn't been a notification already issued in the Federal Register. And she apparently concluded that, yes, it was proper for them to assume there would be no notification issued between July 1st and December 31st, and therefore they could stop watching. And it seems to me that that flies in the face of all common sense. Of course they should keep watching because, of course, there's going to be a distribution. Therefore, of course, there's going to be a notice coming out someday, who knows when. Stay tuned. I understand the point, your Honor. But what Judge Barzali said and what my client agrees with is that 1962A provides the only means by which domestic manufacturers like my client are expected to monitor notice. So my client looks toward that regulation and relies on that regulation to say that no later than 90 days before the end of customs' fiscal year that customs shall not. But, Mr. Traber, the problem is your client also has to follow the statute. The statute says there will be a distribution. And the statute says that there has to be notice, and therefore you know it's coming. And so to say, well, we were entitled to stop looking because we knew it couldn't come is just nonsensical. Well, your Honor, I don't believe that that's what the case law that this Court has put out has said, respectfully. I believe that this Court will look toward prejudice and say and ask solely whether my client had an injury to an interest that the statute was designed to protect. What interest is this designed to protect? Several, your Honor. My client is a domestic manufacturer. And the statute itself specifically states that if there is, if the Commission determines that there's material injury or threat of material injury by reason of imported manufacturers from foreign companies, that an anti-dumping regulation shall be passed. And these regulations protect American jobs. They protect American workers. They protect American manufacturers like my client. That's a pretty sweeping statement of interest. Isn't the interest protected here more narrowly and properly defined as the notice? Well, sure, your Honor. And I think that my client is protected under both the statute, the anti-dumping regulation, and the notice. But to address that notice regulation, a notice regulation just generally and pragmatically speaking protects those who are afforded notice under it. Well, in this case, what prejudice did your, what prejudice is shown on this record by the delayed notice? Because your client was notified in the Federal Register, albeit late. Well, the prejudice, your Honor, is that the distribution in the amount of $619,000 was denied to my client as a result of customs failure to follow. That's an injury. That's why I'm trying to get you to focus on the interest that this regulation is intended to protect. We're not talking about the ultimate amount of damages because of this late filing, but the notice. In what respect was your client prejudiced by the fact that the notice was delayed? When, in fact, you received notice in the Federal Register in due course? Well, I understand, your Honor. And the Court of International Trade addressed that, and it said that properly, we submit, that such a position renders the notice regulation completely meaningless. Why does it render it meaningless? Because if you take that position, that notice is fine whenever it is posted in the Constructor, whenever it is posted in the Federal Register. Well, no, notice is fine whenever it's published. Notice that is delayed is excused if it does not prejudice an interested party. Well, your Honor, as I said, the statute and regulation and the anti-dumping regulation itself were enacted to protect my client. Don't waste time editorializing about the goals. Everybody understands what the Byrd Amendment does. The only question is whether there's prejudice here, and I don't understand what you're saying the prejudice was. You had 60 days to make the filing from July 15th when the notice was published. 60 days not enough? Not if we're not given proper notice, your Honor. Well, it was proper because the statute requires it be in the Federal Register, and it was in the Federal Register. Well, the regulation, your Honor, says exactly when it's supposed to be. I understand that it was untimely under the regulation, but it met the statutory requirement that it be published in the Federal Register. I don't understand what the problem was. 60 days wasn't too short a period. The Federal Register says what it says. Why are you handicapped? Why couldn't you have filed the way you filed in 2002? Well, your Honor, again, that reads a requirement of due diligence into the case law. No, but that's a practical matter. I'm asking as a practical matter why your client couldn't have filed within 60 days from the Register notice of July 15th. Your Honor, all the record reveals on that count is that my client filed as soon as it heard that a 2003 distribution was counted. I didn't see that the record revealed that at all. I saw attorney arguments saying that you filed on October 23rd as soon as you found out about it. I didn't see any evidence at all. Well, that's the only piece of record content that addresses that particular issue. Attorney argument is not record content. Pardon me? Attorney argument is not record content. Then, your Honor, there is no... There's no affidavit saying John Smith called me up on the phone on October 22nd and said, hell, did you not know about the distribution? That was the first I heard of it, so I filed the next day. There's no such affidavit in this record. We have no idea. When your client found out how, why, why not is a total blank. How is a total blank proof of prejudice? Zero evidence of prejudice doesn't equal a showing of prejudice. Well, your Honor, I agree that there's no affidavit there, but I believe Judge Barsley addressed that in the Court of International Trade decision when she said... She said that you shouldn't have to look at the Federal Register once we get to July 1. If she's right, you win. If she's not right on that, then I think you're in trouble. I'm trying to give you an opportunity to get out of the trouble you'd still be in. Well, your Honor, that's absolutely correct position of the case. I understand that you would like us to agree with her on that point. If we do, as I say, you win. But assume for purposes of argument that we don't agree with her on that point, then what? Then how do you still win? Well, your Honor, I think this Court just applies the decisions that it's made in the past regarding prejudice to a company, a domestic manufacturer like my client. Where is there a proof of prejudice? That's what Judge Lynn is asking. That's what I'm asking. We're not getting an answer. Well, like I said, your Honor, and I hate to keep sounding like a broken record, but prejudice is a defined term before this Court and by this Court, and it says that it's an injury to an interest that the statute, the rule, or the regulation in question is designed to protect. And my client can show that it's a protected manufacturer under the Byrd Amendment, as your Honor said, and secondly, the anti-dumping regulation in question, and third, the notice provision. I believe it strains case law interpretation to say that a notice provision does not protect the people who are entitled to receive notice under it. And when customs ignored its own regulations and declined to give timely notice, my client— How are you prejudiced by the two-week delay in the Federal Register publication? Judge, you agreed that if it had come out on June 30th, you would have nothing to complain about. The exact same words were printed in the Federal Register July 14th instead of June 30th, as they should have been. How does that two-week time period hurt your company? Well, it hurt the company, your Honor, because—and I believe, and as your Honor has said, there's no evidence in the record other than the attorney letter that my client just assumed that the 2003 distribution would not happen. It relied on that regulation to its detriment. Well, it didn't rely on the regulation in 2002 because that one was printed late also. But your client didn't stop monitoring the Federal Register on July 1st in 2002. It was still monitoring on July 2nd when the two-day delay that year showed up in the Federal Register. Well, your Honor— Why didn't you do the same thing this year, or 2003, Robert? Well, your Honor, essentially based on the case law, we're asking the Court not to prejudice my client for not assuming agency compliance in 2002 and assuming agency compliance with its regulations in 2003. There's nothing in the case law that says that customs can read its own notice regulations out of existence. And my client relied on those notice regulations, and it did. It stopped looking at the Federal Register. Are you saying that if customs is one day late in publishing its notice, then it has to sort of accept from any interested party at any time any request for distribution of funds? Because after all, if your notion of the interest that's protected is correct, then any company conceivably could come in two years later and say, we didn't know about it until now. Well, your Honor, directly, yes. I think that certainly a statute of limitations would apply to that argument, and I would think that customs would have an argument also that, hey, once the distributions went out, you missed the bus. My client wrote and asked customs and alerted them of this issue before those 2003 distributions even went out. All my client asked was for a very limited remedy, that because of the late notice and before those distributions went out, that customs simply reexamine the issue and give my client the $619,000 to which it was entitled under the 2003 distributions. Okay. I see that I'm out of time. I respectfully request that. Thank you, Mr. Traver. Thank you, Your Honor. Mr. Silverbrand, you may have a very little bit of rebuttal time left. Thank you, Your Honor. The statute was fully complied with. Rebuttal. Don't repeat. If you have something to respond to that he raised that you didn't cover before, you may do it. But don't just repeat what you told us before. Yes, Your Honor. Dixon is arguing that the purpose of the statute was not complied with. Because the statute was fully complied with, the court should look at the- He's not arguing anything about the statute. His argument is based totally on the regulation, not the statute. He was arguing that the purpose of the anti-dumping statute and the birth statute is to provide his client with a remedy, and therefore he's prejudiced. The statute was complied with here, so the purpose of the regulation is what's at issue. The regulation is there for customs administrative process. It's merely there to provide customs with enough time to successfully affect these distributions within the statutory time. What is the interest that the regulation is intended to protect? Customs intended to protect its interest in fully complying with the statute and having enough time- Its interest? Yes, Your Honor. There's no interest of any party that is involved in that regulation other than customs' interest? The statute provides the interest of the party, which is the 30-day notice prior to the distribution. The regulation provides customs additional time after receiving the applications to calculate what those distributions should be. How is an implication of a deadline on customs, how does that serve the interest of customs? It's for internal record keeping and calculation requirements. Then why would it have to be published in the Federal Register? I really don't know where you're going with this. It published it in the Federal Register to provide a time period within which it would publish the notice to provide it, and then it printed another regulation, 159.63, which protects the interest of the parties. That gives the parties the 60 days, which certainly protects their interest. The time period which customs provided itself protects customs' interest in giving it an internal deadline to publish this notice so that it will have enough time to comply with the statute. For these reasons, we ask that you reverse this decision in the trial court. All right, we thank all three. Counsel will take the appeal under advisement. The final argument is in Appeal No. 06-1082, MedRAD Inc. v. Tyco Healthcare.